**Dennis L. LEOPOLDO, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 90–612.

United States Court of Veterans Appeals.

Feb. 19, 1993.

Rick Surratt (non-attorney practitioner) was on the brief, for appellant.

Robert E. Coy, Acting Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Pamela L. Wood, Deputy Asst. Gen. Counsel, and John D. Lindsay, Jr., Washington, DC, were on the pleadings, for appellee.

Before KRAMER, HOLDAWAY and STEINBERG, Associate Judges.

HOLDAWAY, Associate Judge:

Appellant, Dennis L. Leopoldo, appeals a March 15, 1990, decision of the Board of Veterans' Appeals (BVA or Board) which denied him entitlement to service connection for a low back disability incurred after service but which appellant claimed to be secondary to his service-connected right knee disability. *Dennis L. Leopoldo,* BVA 90–12009 (Mar. 15, 1990). Appellant served in the U.S. Army from August 1963 to June 1975. In December 1966, he was injured in a fall and was diagnosed with traumatic arthritis. Throughout service, appellant suffered from problems in his right knee. Upon discharge, "traumatic arthritis R [right] knee" was noted on his separation examination report. Appellant was granted service connection for residuals of the right knee injury and traumatic arthritis, and was rated 10% from date of discharge on June 5, 1975.

On May 31, 1983, a compensation and pension examination was conducted. The examiner diagnosed appellant with post-traumatic arthritis, right knee. The report notes that appellant had not worked since 1981 due to an injury he sustained at work as a rigger. A radiographic report, also of May 1983, noted severe degenerative changes of the knee. In July 1983, a physician indicated that the disability of the right knee had increased. No mention of back pain or a back disability was made in either the physician's letter or the compensation and pension examination report.

On August 17, 1983, a Veterans' Administration (now Department of Veterans Affairs) (VA) medical record report noted that appellant had undergone surgery for a left torn lateral meniscus. The report stated that appellant's right knee hurt frequently and the left knee minimally, and that he had a low backache. The diagnoses were: (1) "Injury, right knee 1966 with traumatic arthritis" and (2) "Injury, left knee 1981 with meniscectomy; low back pain of uncertain cause; flat feet; lateral deviation of both great toes."

A follow-up compensation and pension examination was conducted on November 4, 1983. A November 1983 radiographic report stated that the "lumbar spine and sacrum shows narrowing of the lumbosacral joint space with marked osteophyte formation." The radiographic examiner stated that the appearance was that of degenerative disc disease in that area. An orthopedic surgeon's report of November 7, 1983, noted that appellant had experienced

nonradiating low back pain since January 1983, and that appellant remembered no injury or extraordinary activity at the onset of his pain. Appellant was diagnosed with osteoarthritis of the lumbar spine "of a moderate degree" and post-traumatic degenerative arthritis of both knees.

In 1986, appellant underwent a special orthopedic examination. The examining physician stated in a report dated May 9, 1986, that, according to appellant, the 1981 injury at the shipyard was "when everything started." The diagnoses were: "severe hallux valgus [an abnormal deviation of the big toe away from the midline of the body] with forefoot splaying and associated pes planus, right" and degenerative joint disease of the lumbosacral spine. The radiology report dated May 12, 1986, noted mild osteophyte formation at L4–5 and L5–S1. The report went on to note that "[t]he disc spaces in general are well preserved, (sic) and the facet joints appear grossly normal."

On October 13, 1987, appellant was examined by a VA physician who stated in a progress note that appellant suffered from "Lumbosacral strain due to residules [sic] of right knee injury." It is unknown whether this physician was a specialist. Appellant also submitted a radiologic report dated October 9, 1987, which stated there was "[e]vidence of long standing [sic] intervertebral disc disease between L5 and S1. No significant change in any findings when compared with the last prior ... [material omitted from the record]."

On August 29, 1988, the BVA rendered a decision in appellant's case considering, inter alia, entitlement to service connection for a low back disorder "to include arthritis of the lumbar spine." The BVA found that this disorder was not etiologically related to the service-connected knee disability. Appellant reopened his claim on September 19, 1988, by submitting the above referenced 1987 medical records which apparently were not considered previously by the VA Regional Office (VARO) or BVA.

In 1989, in connection with a VA compensation and pension examination, the VA sought an orthopedic consultation regarding appellant's back condition. On February 22, 1989, the consulting physician sent an extensive report to appellant's VA physician with the following diagnoses: "1. Degenerative disc disease of the LS [lumbosacral] spine. 2. Low back pain with right buttock pain, probably secondary to # 1 and receiving some aggravation from right knee and right foot. 3. Traumatic arthritis, right knee.... 4. Chronic pain syndrome with variability on examination today."

On March 15, 1989, the VARO determined that, although some of appellant's back complaints might be due to aggravation by his service-connected right knee disability, appellant's condition was "primarily" due to the degenerative disc disease of the lumbosacral spine. This finding was upheld by the appeal now under review.

I.

There are two issues that merit discussion: (1) an issue raised by the Court, sua sponte, and briefed by the parties concerning the rating consequences when a service-connected condition aggravates, but is not the *cause* of a non-service-connected injury; and (2) an issue neither raised by the appellant nor briefed by the parties, concerning whether the BVA decision violated the rule in *Colvin v. Derwinski,* 1 Vet.App. 171, 174–175 (1991).

■ The first issue is one raised by the Court and was phrased this way in seeking briefs on the issue:

When a claimant's service-connected injury/disease aggravates, but is not the proximate cause of, a non-service-connected injury/disease, is the claimant entitled to service connection for that increment in severity of the non-service-connected injury/disease attributable to the service-connected injury/disease?

After consideration of the parties' supplemental memoranda and the applicable law and regulation, the Court answers the above question in the negative. The Court acknowledges that the use of "disability" in 38 U.S.C.A. § 1110 (West 1991), and the

applicable regulation, 38 C.F.R. § 3.310(a) (1992), rather than "a disability" or "disabilities," creates an ambiguity as to whether "disability" refers to "a state of disablement" or merely to "a disease or injury." The Court notes further that the same use of "disability" recurs in the definitions of "compensation," "dependency and indemnity compensation," and "non-service-connected" in paragraphs (13), (14), and (17), respectively, of 38 U.S.C.A. § 101 (West 1991).

The parties have not cited and the Court has not discovered any legislative history illuminating this interpretive question. Nor does there appear to be any clear or long-standing agency or departmental interpretation from which guidance might be taken.

The provisions of section 1110 must be read in the context of the whole statutory scheme. *See* SUTHERLAND STAT. CONST. § 46.05 (5th Ed). "[E]ach part or section [of a statute] should be construed in connection with every other part or section so as to produce a harmonious whole." *Talley v. Derwinski*, 2 Vet.App. 282, 286 (1992) (quoting 2A N. SINGER, SUTHERLAND ON STATUTORY CONSTRUCTION § 46.05 (4th ed. 1984)). In the absence of any statutory definition in chapter 11 or in the title-wide definition section 101 of title 38, U.S.Code, the Court draws pertinent guidance from the statutory definition in 38 U.S.C.A. § 1701(1) (West 1991), which defines "disability" as follows: "The term 'disability' means a disease, injury, or other physical or mental defect." The Court adopts this definition for purposes of construing section 1110. This affords the same meaning to the term "disability" for purposes of determining eligibility for disability compensation for service-connected disabilities under chapter 11 as applies for purposes of determining eligibility for health care for such disabilities under chapter 17.

Under this construction, section 1110 provides for disability compensation only for a present "disease, injury, or other physical or mental defect" resulting from "personal injury suffered or disease contracted in line of duty," or for in-service aggravation of a pre-existing disease or injury, but not for aggravation of a non-service-connected condition by a service-connected condition.

## II.

As previously stated, the appellant did not raise a possible *"Colvin"* violation in his pleadings. However, the Court notes with concern the following language in the BVA decision:

> We would further emphasize that at the time the veteran started to have back problems in the early 1980's, it was noted that he walked with only a slight limp and there was no evidence of leg length discrepancy, it is apparent that the low back problem developed independently of the service-connected disability.

There is no evidentiary basis in the record for this statement, which is, clearly, a medical conclusion. As judges, we have no idea how significant, medically speaking, leg length discrepancy might be as to the etiological origins of the appellant's back condition; nor do we know how significant this factor was in the conclusion reached by the Board. This was, therefore, a clear violation of the standard announced in *Colvin, supra,* which requires that medical findings be based on independent medical evidence and not the internal medical expertise of the Board members. *See also Hatlestad v. Derwinski*, 3 Vet.App. 213, 217 (1992). The Court will, therefore, REMAND this case for readjudication consistent with this opinion. *See Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991). At such readjudication, the appellant is free, of course, to offer additional evidence as to whether his service-connected injury caused, rather than merely aggravated, his present back condition.