**Vera WRIGHT, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 95–570.**

United States Court of Veterans Appeals.

Aug. 12, 1996.

Donald E. Williams, was on the brief, for appellant.

*Mary Lou Keener,* General Counsel; *Ron Garvin,* Assistant General Counsel; *Adrienne Koerber,* Deputy Assistant General Counsel; and *Patrick J. Lamoure,* were on the brief, for appellee.

Before KRAMER, FARLEY, and IVERS, Judges.

IVERS, Judge:

The appellant, the spouse of deceased veteran John F. Wright, Jr., appeals from a May 16, 1995, Board of Veterans' Appeals (BVA or Board) decision which denied her claim for clear and unmistakable error (CUE) in a prior, final BVA decision. For the reasons stated below the Court will affirm the BVA's May 16, 1995, decision.

## I. FACTS

The veteran had active service in the U.S. Army from December 1942 to December 1945, and from August 1948 to January 1950. Record (R.) at 13, 19. In a June 1952 rating decision the veteran was service-connected for "anxiety state" rated at 10% disabling. R. at 19. After the veteran requested an increase in his disability evaluation rating, the regional office (RO) issued a rating decision in August 1968 which increased the veteran's rating to 30%, effective April 1968. R. at 22.

In July 1982, the veteran submitted a claim to increase his 30% disability rating. R. at 25. In November 1982, the RO denied the claim, finding "no change warranted." R. at 28. In July 1983, the veteran submitted his Notice of Disagreement (NOD), and a Statement of the Case (SOC) was issued. R. at 30, 32–36. In August 1983 the veteran appealed to the BVA. R. at 38. The BVA remanded the case to the RO in a July 1984 decision. R. at 41–43. The BVA found that

> [t]he veteran should be hospitalized by the Veterans Administration in order to be given a period of observation and evaluation of his service-connected nervous disorder. In addition, a social and industrial survey should be conducted to ascertain the current severity of the veteran's disability due to his nervous disorder.

R. at 42–43.

On June 23, 1985, the veteran died from "[c]ardiopulmonary [a]rrest," "[c]erebrovascular [a]ccident ([m]assive)," and "[p]neumonitis," while his claim was still in remand status. R. at 45. Cardiopulmonary arrest pertains to the stopping of the heart and lungs. Dorland's Illustrated Medical Dictionary 120, 269 (28th ed.1994) [hereinafter Dorland's]. Cerebrovascular pertains to the blood vessels of the brain, stroke syndrome. Dorland's at 10, 302. Pneumonitis is an inflammation of the lungs. Dorland's at 1317.

In July 1985, the appellant submitted her Application for Dependency and Indemnity Compensation (DIC) or Death Pension by Surviving Spouse or Child, requesting that the "BVA remand be continued for appeal on request for increase on S[ervice] C[onnected] D[isability] for veteran" and also for any accrued benefits therefrom. R. at 47–50.

In September 1985, the RO issued a rating decision which confirmed the denial of the veteran's claim for an increased disability rating. R. at 52–53. In deciding not to increase the rating the RO reviewed the records of the veteran's treatment during his terminal stay at the VA medical center as well as the social and industrial survey dated December 1984. R. at 53. A Supplemental SOC (SSOC) was issued in September 1985. R. at 55–58. The SSOC contained a notation which stated, "The widow should accept this Supplemental Statement of the Case as notification of the action being taken on her pending claim for accrued benefits." R. at 57.

In January 1986, the appellant submitted a letter which was marked as an NOD, which asserted in part that she had been "unjustly compensated" by VA. R. at 60–61. In June 1986, the RO issued an SSOC which stated that the SSOC should be considered notification of action being taken on her pending appeal. R. at 63–67. The BVA issued a decision in December 1986 which denied the appellant's claim for an increased evaluation for anxiety neurosis, evaluated as 30% disabling, for the purpose of accrued benefits. Entitlement to service connection for the cause of the veteran's death, CHAMPVA [VA Civilian Health and Medical Program] benefits, and service-connected burial benefits were established. R. at 72–84. The Board found that

> prior to his death, the anxiety neurosis was manifested by psychiatric symptoms including anxiety, feelings of depression, nightmares, and flashbacks. He received regular medication and treatment.... A complete psychiatric evaluation was unable to be completed at Veterans Administration Medical Center, Highland Drive, due to the veteran's respiratory arrest. However, a partial evaluation revealed evidence of depression, feelings of hopelessness, helplessness, sleep disturbance, ruminating guilt and episodes of panic-like attacks. While the psychiatric symptoms were certainly significant and interfered with his daily activities, they are not shown to have been productive of more than definite social and considerable industrial impairment.

R. at 82.

In January 1987, the appellant submitted a request for reconsideration of the BVA's December 1986 decision to the RO. R. at 86. In a March 1987 letter, the appellant was notified that the BVA was reconsidering her claim for entitlement to an increased evaluation of the veteran's anxiety neurosis, evaluated at 30% disabling. R. at 89.

In February 1988, the BVA issued its reconsideration decision which denied the appellant's claim for an increased evaluation of the veteran's anxiety neurosis for the purpose of accrued benefits. R. at 91–100. The Board noted that the December 1986 decision was final and its current review by an enlarged panel was for the purpose of determining whether the December 1986 decision involved "obvious error" so as to warrant reversal. R. at 99. The BVA found that in order to have warranted an increased evaluation, the "psychiatric symptomatology must have approximated severe industrial impairment and substantial impairment of interpersonal relationships." *Ibid.* The Board also noted that the veteran had no work tolerance and that he was disabled due to his psychiatric disability. *Ibid.*

The Board took note of evidence which revealed that the veteran experienced periods of "anxiety, depression and sleep disturbance." *Ibid.* However, the Board noted evidence showing that the veteran's thinking was organized, his "affect was appropriate," his recent and remote memory appeared to be grossly intact, and he was oriented to time, place, and person. *Ibid.* The Board reasoned that "[b]ased upon these findings, it was reasonable for the Board to conclude that the actual psychiatric symptomatology was productive of no more than considerable industrial impairment and definite impairment of interpersonal relationships." R. at

100. The Board found that the December 1986 BVA decision, which denied the appellant's claim to an increased evaluation of the veteran's service-connected anxiety neurosis for purposes of collecting accrued benefits, was adequately supported by the evidence then of record. The Board also found that the legal determination therein was final. *Ibid.*

In February 1992, four years after the last, final BVA reconsideration decision of February 1988, the appellant submitted a document which could be interpreted as a claim alleging CUE in the 1985 and 1988 BVA decisions or, in the alternative, a request to reopen her claim based upon new and material evidence. R. at 106. In March 1992, the RO issued a confirmed rating decision which denied the appellant's claim. R. at 108. In April 1992, the appellant filed an NOD and an SOC was issued. R. at 110, 113–17. The appellant submitted an appeal in May 1992. R. at 119. Evidence was taken in the form of testimony at the appellant's personal hearing in August 1992. R. at 122–26. The hearing officer issued a decision that same month stating, "Based on review of all of the evidence of record, including testimony given at the claimant's personal hearing, no change is warranted in the denial of entitlement to accrued benefits." R. at 129.

In the May 16, 1995 decision, the Board found that "[c]lear and unmistakable error [did] not exist as a matter of law with respect to the February 1988 decision of the Board, and that decision is final. . . ." R. at 6.

## II. ANALYSIS

### A. New and Material Evidence

■■■ A veteran's survivors may have a claim for benefits under chapter 13 of title 38, but such claims are different from those of the veteran. *Landicho v. Brown,* 7 Vet. App. 42, 47–48 (1994); *see also Zevalkink v. Brown,* 6 Vet.App. 483, 489–90 (1994) (accrued-benefits claim is different, but derivative of the veteran's disability compensation claim). Chapter 13 provides for the award of DIC survivors benefits to certain relatives of the veteran in the event of the veteran's service-connected death or death while rated 100% disabled. 38 U.S.C. §§ 1310, 1318. "A survivor's accrued-benefits claim asserting that the veteran's disorder was service connected necessarily incorporates any prior adjudications of the service-connection issue in claims brought by the veteran, because the accrued-benefits claim derives from the veteran's service-connection claim." *Zevalkink,* 6 Vet.App. at 492. The Court held that in those circumstances, "there must be new and material evidence before the accrued benefits claim may be considered, just as would have been the case if the veteran had himself been re-presenting the compensation claim." *Ibid.; see also* 38 U.S.C. §§ 5108, 7104(b) (Secretary must reopen a previously and finally disallowed claim when "new and material evidence" is presented or secured with respect to that claim.). In the case before us the appellant is seeking to reopen both a derivative claim for accrued benefits and a claim for DIC.

To the extent that the document submitted in February 1992 by the appellant may be considered as a request to reopen the appellant's claims based upon new and material evidence, it must fail. The appellant provided no new evidence and only asserted that evidence which was previously of record provided positive evidence of the claims. R. at 106. The appellant has failed to provide any evidence which would warrant the reopening of her claims under 38 U.S.C. § 5108.

### B. Clear and Unmistakable Error

■■■ A CUE claim is a collateral attack on a final RO decision. *Eddy v. Brown,* 9 Vet.App. 52, 57 (1996); *Allday v. Brown,* 7 Vet.App. 517, 529 (1995). This Court's authority to review CUE under 38 C.F.R. § 3.105(a) relates only to review of RO adjudicatory decisions and not to those of the Board. *Elkins v. Brown,* 8 Vet.App. 391, 396 (1995) (citing *Smith v. Brown,* 35 F.3d 1516, 1521 (Fed.Cir.1994)). In the May 16, 1995, decision the Board took note of the veteran's previous 30% rating for service-connected anxiety neurosis, as well as the fact that further attempts to increase this evaluation by the veteran himself, and by the appellant, had not been supported by medical evidence of record and were, accordingly, denied. R. at 6–7. Citing *Smith, supra,* to support the

premise that the authority to review claims based on CUE under 38 C.F.R. § 3.105(a) relates only to the review of final decisions of an RO and not to decisions of the BVA, the Board noted that it had affirmed the September 1985 decision of the RO in December 1986 and, on reconsideration, in the final BVA decision of February 1988. R. at 7. The Board concluded that its February 1988 decision regarding the alleged CUE in its affirmance of the denial of the appellant's claim for accrued benefits was not subject to review, and therefore, there was no issue presented for review. *Ibid.*

The Court agrees with the BVA's decision because, under *Smith,* a BVA decision is not, as a matter of law, subject to a claim of CUE under 38 C.F.R. § 3.105(a). The September 1985 decision of the RO was subsumed into the Board's February 1988 reconsideration decision which upheld the denial of an increased rating for the veteran's service-connected anxiety neurosis. *Robinette v. Brown,* 8 Vet.App. 69, 80 (1995); *Mykles v. Brown,* 7 Vet.App. 372, 375 (1995). Therefore, the BVA decision dismissing the appeal must be affirmed.

## III.  CONCLUSION

For the reasons stated above, the BVA's May 16, 1995, decision is AFFIRMED.