Citation Nr: 1736736 
Decision Date: 08/31/17 Archive Date: 09/06/17

DOCKET NO. 11-00 188A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Houston, Texas


THE ISSUE

Entitlement to service connection of a low back disability, to include as secondary to a service-connected left knee disability.


REPRESENTATION

Veteran represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

Patricia A. Talpins, Associate Counsel 


INTRODUCTION

The Veteran served on active duty from March 1966 to February 1968, with additional service in the United States Army Reserves from February 1968 to March 1972 and with the Texas Army National Guard from October 1974 to December 1984.

This matter comes before the Board of Veterans' Appeals (BVA or Board) on appeal from a May 2007 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Houston, Texas. 

Historically, the Board notes that the Veteran's service connection claim for a back disability was denied in rating decisions dated in November 2001, December 2003 and March 2005. In the May 2007 rating decision on appeal, the RO reopened the Veteran's back disability claim but denied the claim on its merits. The Veteran appealed to the Board. 

In March 2013, the Veteran appeared at a Video Conference hearing before the undersigned Veterans' Law Judge. A transcript of the hearing is of record.

In a July 2014 decision, the Board reopened and remanded the Veteran's claim for service connection for a back disorder for additional development. After recertification, the Board remanded the issue again in November 2016. The development requested by the Board has since been completed; and the appeal has been returned to the Board for further review.


FINDINGS OF FACT

1. The evidence of record reveals that the Veteran has a current diagnosis of, among other things, degenerative joint disease of the lumbar spine. 

2. The Veteran has been service-connected for several left knee conditions, to include chondromalacia patella of the left knee, left knee medial meniscectomy, and status-post total arthroplasty of the left knee with instability and scar. 

3. The competent and probative evidence of record reveals that the Veteran's degenerative joint disease of the lumbar spine was not shown in service or within one year after discharge from service, nor does the evidence show that the Veteran's lumbar spine disability is linked to or otherwise a result of the Veteran's service or service-connected disabilities. 


CONCLUSION OF LAW

The criteria for service connection of the Veteran's low back disability have not been met. 38 U.S.C.A. §§ 1101, 1110, 1112 (West 2014); 38 C.F.R. §§ 3.102, 3.303; 3.306; 3.310 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

Duties to Notify and Assist

Neither the Veteran nor his representative has raised any issues with the duty to notify or duty to assist. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (holding that "the Board's obligation to read filings in a liberal manner does not require the Board . . . to search the record and address procedural arguments when the veteran fails to raise them before the Board."); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to a duty to assist argument).


Overview of Service Connection Claims

In this appeal, the Veteran seeks service connection for a low back disability based upon two separate theories. The first theory is direct service connection, in that the Veteran believes that he fell and hurt his back in the late-1970s, causing damage that worsened over time and eventually manifested to the point that he required back surgery. See March 2013 BVA hearing transcript, p. 7. In this regard, the Veteran testified during his March 2013 BVA hearing that he hurt his back while on active duty. Specifically, the Veteran reported that he was at maneuvers with the Texas Army National Guard sometime between 1974 and 1980 when he did not see, and subsequently fell on, an embankment. Id., pgs. 2-3. He testified that he injured his knee in the fall, such that he felt pain immediately. Id., p. 3. He also essentially stated that he felt that he hurt his back, although he did not feel back pain at that time. Id. He reported that he believed that his back actually started to hurt in approximately 1988, while doing a job that required a lot of walking and a lot of going up and down stairs. Id., p. 6. At that time, he stated that he thought he was just experiencing back soreness, but it never went away. As such, he sought medical care that consisted of pain injections, and was subsequently referred to an orthopedic surgeon (Dr. S.J.C.) in approximately 2000. Id. He subsequently had surgery on his back in 2008. Id. 

In the alternative, the Veteran argues that service connection for his low back disability it warranted on a secondary basis, in that his back disability developed as a result of or has been aggravated by his service-connected left knee disability. Id., p. 4. 

For reasons set forth below, the Board finds that the Veteran's claim of entitlement to service connection for a low back disability must be denied. 

Service connection is warranted where the evidence of record establishes that a particular injury or disease resulting in disability was incurred in the line of duty in active military service or, if pre-existing such service, was aggravated thereby. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(a). Generally, in order to prove service connection, there must be competent, credible evidence of (1) a current disability, (2) in-service incurrence or aggravation of a disease or injury, and (3) a nexus, or link, between the current disability and the in-service disease or injury. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

Service connection may also be established on a secondary basis for a disability that is proximately due to or the result of a service connected disease or injury. 
38 C.F.R. § 3.310(a). Establishing service connection on a secondary basis requires evidence sufficient to show that: (1) a current disability exists; and (2) that the current disability was either (a) caused by or (b) aggravated by a service connected disability. See 38 C.F.R. § 3.310(a); see also Allen v. Brown, 7 Vet. App. 439 (1995) (en banc) reconciling Leopoldo v. Brown, 4 Vet. App. 216 (1993). 

Service connection for certain chronic diseases, including degenerative joint disease, will be presumed if the diseases manifest to a compensable degree within one year following active military service. This presumption, however, is rebuttable by probative evidence to the contrary. 38 U.S.C.A. §§ 1110, 1112, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309. Presumptive periods are not intended to limit service connection to diseases so diagnosed when the evidence warrants direct service connection. The presumptive provisions of the statute and VA regulations implementing them are intended as liberalizations applicable when the evidence would not warrant service connection without their aid. 38 C.F.R. § 3.303(d). 

Regulations provide that service connection may also be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disability was incurred in service. 38 C.F.R. § 3.303(d). Evidence of continuity of symptomatology from the time of service until the present is required where the chronicity of a condition manifested during service either has not been established or might reasonably be questioned. 38 C.F.R. § 3.303(b). In Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013), the Federal Circuit limited the applicability of the theory of continuity of symptomatology in service connection claims to those disabilities explicitly recognized as "chronic diseases" in 38 C.F.R. § 3.309(a). 

When considering evidence supporting a service connection claim, the Board must consider, on a case-by-case basis, the competence and sufficiency of lay evidence offered to support a finding of service connection. See Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009) (reiterating that "'[l]ay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional.'") (quoting Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007)).

In determining whether service connection is warranted for a disability, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case the claim is denied. Gilbert v. Derwinski, 1 Vet. App. 49 (1990). To do so, the Board must assess the credibility and weight of all the evidence, including the medical evidence, to determine its probative value, accounting for evidence that it finds to be persuasive or unpersuasive, and providing reasons for rejecting any evidence favorable to the veteran. See Masors v. Derwinski, 2 Vet. App. 181 (1992).

Service Connection for a Low Back Condition

Turning to the record on appeal, a review of the Veteran's post-service medical records reveals that the Veteran has a current diagnosis of degenerative joint disease of the lumbar spine. The issue that is disputed is whether or not the Veteran's current low back disorder is related to service or to any service-connected disability. 

Turning first to the question of direct service connection, the Board initially observes that the post-service medical evidence in the claims file does not contain any evidence of any back pain whatsoever until September 1983, at which time the Veteran reported to a National Guard medical examiner in a "Report of Medical History" that he had experienced recurrent back pain. The Veteran also reported that he had previously injured his back in an April 1983 motor-vehicle accident, and the examiner attributed his past experiences of recurrent back pain to the residuals of that injury. The Board also notes that a radiographic examination completed at this time and contained in the Veteran's National Guard medical records shows the Veteran to have a normal lumbosacral spine. 

During a VA examination in October 2001, the Veteran was diagnosed with mild degenerative joint disease of the lumbar spine, without spasm. At that time, the Veteran reported that problems with his back started sometime after he began favoring his left knee. X-rays taken at the time of the examination indicated that the Veteran had mild straightening of the lumbar spine, decreased lordosis, anterior syndesmophyte at L5, and L5-S1 joint space mildly decreased. The examiner ultimately opined, among other things, that the Veteran's back condition was not secondary to his service-connected left knee based upon his observation of the Veteran's stable, nonantalgic gait and his physical examination. 

Thereafter, post-service medical records dated in January 2003 reflect the Veteran's chief complaint as that being right knee pain; however, he also complained of swelling and pain going up to his hip and back. Medical records primarily dated in 2004 and 2005 document the Veteran's consistent complaints of back pain, including radiculopathy. In this regard, records dated in July 2005 note that an x-ray examination of the Veteran's spine found mild degenerative endplate spurring, decreased disc space, and subchondral sclerosis at all levels of the Veteran's spine. The examiner also found mild degenerative changes in the SI joint; and an MRI conducted in August 2005 found disc protrusions at the L4-5 and L5-S1 vertebrae. Nerve conduction studies undertaken in September 2005 revealed evidence suggestive of mild, acute L5/S1 radiculopathy. The Veteran subsequently underwent intraluminal back surgery. 

In July 2006 the Veteran began seeing an orthopedic surgeon, Dr. S.J.C. See private medical records received by VA in July 2006. At that time, the Veteran reported to Dr. S.J.C. that despite his surgery, he continued to experience pain in his back. Dr. S.J.C. documented in his records that he had an extensive discussion with the Veteran with regards to the origin of his lumbar spine difficulty. At that time, the Veteran reported to Dr. S.J.C. that he sustained an injury while in the military in the 1970s. He told him that he had undergone three subsequent left knee surgeries for this injury which he sustained in the military. He also stated to Dr. S.J.C. that he had had an antalgic gait for the previous 2.5 decades. In response to the Veteran's history, Dr. S.J.C. told the Veteran that ambulating with an antalgic gait resulted in increased stress on his lumbar spine discs, which likely resulted in his back condition. Therefore, it was Dr. S.J.C.'s opinion that the Veteran's left knee pathology resulted in his current lumbar spine difficulty. 

The Board observes that Dr. S.J.C. submitted another statement on the Veteran's behalf in February 2008, at which time he stated, among other things, that the Veteran had been a patient of his for several years, undergoing treatment for a lumbar spine condition secondary to a fall due to left knee internal derangement. 

In regards to other post-service evidence contained in the claims file, the Board observes that the Veteran was afforded a VA medical examination in January 2007. During this examination, the Veteran stated that he first noticed his back pain in August 2005, and that he did "not recall an isolated injury to his back." After then examining the Veteran directly, the examiner stated "It is my opinion that neither the lower back condition nor the knee condition are directly related to his military service as these conditions are commonly found in people of his age who have never served in the military." The examiner went on to explain that the Veteran "did not provide a history of an injury to ... his back during his military career. A review of his medical record failed to reveal document to support his claim..." In an addendum opinion dated in April 2007, the VA examiner provided additional guidance in that he stated that the Veteran's lower back condition was less than likely related to his "pre-existing," service-connected condition of his left knee. See January 2007 VA examination report; April 2007 addendum medical opinion. 

Turning to the Veteran's service medical records, the Board observes that none of these records indicate or show that the Veteran ever complained of or was treated for any back symptomatology; nor was he ever diagnosed as having a back condition in service. The Veteran's report of medical examination dated in November 1967, conducted in connection with his discharge from service, reveals that his spine and musculoskeletal clinical evaluations were normal. In making these findings, the Board is aware of the Veteran's assertions in the record that he fell while in service and subsequently injured his back. However, it appears from the record that the Veteran has not been distinguishing between active duty military service and his inactive service in the National Guard. Specifically, the Board notes the Veteran's testimony to the undersigned that this fall occurred between 1974 and 1980, which is significant because the Veteran only served on active duty from March 1966 to February 1968. This evidence suggests that the Veteran was injured during inactive service, and this conclusion is bolstered by the Veteran's testimony that the fall in question occurred while on "maneuvers with the Texas Army National Guard." 

In light of the foregoing, the Board finds that the more competent and credible evidence (including the Veteran's own testimony) in this case shows that the Veteran did not directly injure his back in service, experience any back symptomatology in service or experience back symptomatology within the first year after he separated from service. Even if the Board were to assume otherwise, the Board observes that despite being provided with several VA medical examinations and being treated by an orthopedic surgeon, the claims file does not contain any medical nexus opinion that could link the Veteran's current back condition directly to service. Thus, after reviewing all of the evidence of record, the Board finds that the preponderance of the evidence is against finding that the Veteran's back condition manifested in service or within a year of separation of service. Thus, service connection on a direct basis and presumptive basis cannot be granted. 

Turning to the Veteran's secondary service connection claim, the Board observes that the Veteran underwent a lumbar interbody fusion with decompression and stabilization in January 2008; and in December 2010, Dr. S.J.C submitted another statement on the Veteran's behalf in which he asserted the "lumbar spine condition is secondary do to [a] fall on the left knee" that the Veteran previously experienced. The statement goes on to discuss various functional limitations that the Veteran experienced due to his multiple disabilities. This statement was reaffirmed by Dr. S.J.C in April 2013. At that time, Dr. S.J.C noted that the Veteran's history of multiple left knee surgeries had resulted in "left knee instability and pain." Dr. S.J.C also stated that the Veteran's lumbar spine disability was "secondary to a fall due to left knee internal derangement." 

Subsequently, the Veteran was afforded a VA medical examination of his spine in August 2014. During this examination, the Veteran repeated the claim from his March 2013 testimony that he was injured by a fall into a ravine while serving in the military. After conducting an examination of the Veteran's spine, the VA medical examiner opined that the Veteran's spine disability was "less likely than not proximately due to or the result of the Veteran's service connected left knee." The examiner then provided several pages of medical rationale to support the opinion that "there is no scientific medical evidence reviewed or offered that suggest that knee [osteoarthritis] cause lumbar spine [osteoarthritis]."

While the Board found the August 2014 VA examination sufficient upon which to evaluate the Veteran's claim in terms of addressing the likelihood of the Veteran's service-connected left knee disability directly causing his current back condition, the examination report did not clearly address the issue of whether the Veteran's left knee disability could be aggravating his low back condition. As such, the Veteran was afforded another VA examination in order to obtain the appropriate medical opinion. This examination occurred in in April 2017. 

A review of the April 2017 VA examination report reveals that the examiner reviewed the Veteran's entire claims file, obtained a medical history and conducted a physical examination. Thereafter, she diagnosed the Veteran with degenerative arthritis of the lumbar spine s/p spinal fusion L4-S1. After essentially addressing the chronology of the Veteran's back pain, (i.e., noting that the Veteran first appeared to complain of back pain secondary to his knee in 2001; and that his back pain worsened such that he underwent spinal surgery in 2008), the VA examiner initially noted that a left knee disability such as the Veteran's (i.e., left knee s/p total arthroplasty with instability and scar, medial meniscectomy and chondromalacia patella) did not cause significant physical deformity such as ankyloses of the major joints (i.e. ankle, knees or hips), or infections involving the spine or joints on same side of the back that is affected. Additionally, she reported that it did not result in neurologic impairment or severe gait dysfunction. The VA examiner went on to explain that she was unable to locate peer-reviewed studies that supported the concept that conditions of left knee (including osteoarthritis s/p total arthroplasty, meniscal conditions or chondromalacia patella) would be a causative or aggravating factor for developing osteoarthritis of the lumbar spine; and that the medical evidence was not sufficient to support a determination of a baseline level of severity. Given the lack of findings of an orthopedic disorder which would affect the Veteran's lumbar spine and the lack of peer-reviewed studies supportive of the Veteran's causation theory, the VA examiner opined that the Veteran's service-connected left knee disability was not a causative (direct) factor of the osteoarthritis of his lumbar spine; and it was unlikely that his degenerative arthritis of the lumbar spine had been aggravated or was currently being aggravated beyond its natural progression by his service-connected left knee disability.

In evaluating and analyzing the evidence and medical opinions in this case, the Board finds the private medical opinions provided by Dr. S.J.C to be less probative and persuasive than the other medical evidence contained in the claims file. Specifically, while Dr. S.J.L. has submitted several statements opining that the Veteran's left knee pathology results in his current lumbar spine difficulty, he has failed to provide any rationale or basis upon which he formulated his opinions. In fact, while he has indicated his review of the Veteran's claims file and pertinent medical records, he has failed to address evidence that is obviously contradictory to the information upon which he has considered in making at least one of his opinions, such as evidence that the Veteran was observed to have a stable, nonantalgic gait at the time of his October 2001 VA examination - clearly within the 2.5 decade time frame referenced by the Veteran during his initial consultation. In his February 2008, December 2010 and April 2013 statements, Dr. S.J.C. attributed the Veteran's lumbar spine condition secondary to a fall due to left knee internal derangement and/or secondary to a fall of the left knee, without addressing the time gap between the Veteran's initial fall while serving with the National Guard, back symptomatology that appears to have first been noted in September 1983, or the April 1983 motor-vehicle accident the Veteran reported he had been involved in. 

In comparison, although the October 2001 and January 2007 VA examination reports (with a related addendum opinion in April 2007) failed to provide explanations to support the conclusion that the Veteran's back disability was not related to his left knee disability, the Veteran's August 2014 VA medical examiner cited several pages of medical rationale to support the opinion that the Veteran's spine disability was less likely than not proximately due to or the result of his service-connected left knee. Additionally, in addressing the issue of secondary service connection aggravation, the April 2017 VA examiner supported her negative nexus opinion after setting forth the elements expected to be found when an orthopedic disorder affects a person's lumbar spine and the lack of peer-reviewed studies supportive of the Veteran's causation theory,. 

In light of the Board determination that the August 2014 and April 2017 VA examination reports are more probative and persuasive in comparison to the other medical opinions and evidence in this case, the Board finds that service connection for the Veteran's back disability is not warranted on either a direct or secondary basis. In reaching this decision, the Board has considered the applicability of the benefit of the doubt doctrine. However, the preponderance of the evidence is against the Veteran's claim. As such, that doctrine is not applicable in the instant appeal, and the Veteran's low back disability claim must be denied. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102.


ORDER

Service connection of a low back disability, to include as secondary to a service-connected left knee disability, is denied. 



____________________________________________
MICHAEL E. KILCOYNE
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs